Wright, J.
Christina A. Williard filed her petition for divorce and alimony April 2, 1861, and obtained her decree November 23, 1861, and the question is one of priority between this decree and the Tolerton mortgage, recorded September 6, 1861.
The divorce proceeding seems to have had a double aspect, in that it asks for alimony, and also the protection of' the wife Christina’s equitable rights in the property, the-subject of. dispute. This property was bought with her own money, by her husband, who also received-other of his wife’s money.
It. seems to be conceded by counsel for plaintiff in error that if Mrs. Williard’s petition in the divorce case had set up an equitable title to the land, and her equitable title had been established by the decree in that ease, there would. *587 bavé been a Us pendens, which would have prevented third persons from acquiring a title by purchase adverse to her claim. It is true that the decree in that case was not a formal decree upon her equities, but it is evident that the court in coming to its conclusion did take these equities into consideration, so that the decree may fairly be considered an equitable one in her favor. In Harrer v. Wallner, 80 Ill. 197, a prayer for partition was included in a bill for divoi’ce, and the wife was allowed to make all parties claiming any interest in the land through or under any pretended or real conveyance from her and her husband, or either of them, and settle all the rights of the parties in one suit.
The statute of divorce and alimony (1 S. & C. 512) provides that when a divorce is granted by reason of the aggression of the husband, the wife shall be restored to all her lands, tenements, and hereditaments not previously disposed of, and shall be allowed such alimony “as the court shall think reasonable, having due regard to the property which came to him (the husband) by marriageand this alimony is to be “ allowed to her in real or personal property, or both, by decreeing to her such sum of money, payable either in gross or installments, as the court may deem just and equitable.” A large discretion is here given the court, and in respect of the alimony its jurisdiction would seem to' be in the nature of chancery. It is authorized to do what is “ equitable” in the premises, and when, in a proceeding like the one under consideration, the wife claims rights in her husband’s property other than those arising from the marital relation, and insists upon them, in connection with lier claim for alimony, the court is fully authorized to pass upon them. In view of this statute, therefore, it was doubtless deemed “just and equitable ” to make a larger allowance, by reason of the fact that the wife’s property had all gone to the husband and that this identical real estate was purchased with her means. If this be in fact the assertion of an equity, it is n.ot the less so that it is made under the name of alimony.
In Dinet v. Eigenman, 80 Ill. 274, it is held that when *588 the husband receives property of his wife by marriage, or converts his means into real estate, taking the title in his own name, or when the wife, from her industry, economy, .and business capacity, contributes largely to the accumulation of a fortune, it is equitable and just that she should have a large share in such property, on divorce for the husband’s fault.
But, again, in the divorce suit, this land was specifically ■described, an equity in it was claimed, an injunction asked to prevent the husband from disposing of it pendente lite, of .all of which Tollerton had notice when he took his mortgage, and in -the decree the alimony was fastened upon the land.
In the case of Hamlin’s Lessee v. Bevans, 7 Ohio (pt. 1), 161, which was a question of priority between judgments and a decree for alimony, the court say : “ Where the object of a suit, in law or equity, is to recover specifically a ■described piece of real estate, the pendency of the suit is held to be notice to all the world of the claim, aud a final judgment or decree in his favor overreaches intermediate purchases — that is; purchases made pending the suit. So, if the suit be against a trustee, to affect his title to land as trustee, and a final decree be rendered to that effect, the land is bound from the service of process.”
In that case, the court observe that the petition for divorce alleged no claim to any specific tract of land.
It is said that a purchase from a defendant in a bill to enforce an equitable right of any kind, will not confer a valid title. White v. Tudor, 2 Leading Cases in Equity, (pt. 1), 192.
In the case before us, the property is described so that any who chose to inquire might find out precisely what it is.
In addition to the wife’s equity, her alimony is sought to be charged upon it, and an injunction is asked to prevent any alienation. If that injunction had been allowed, it would not have been any further notice, than the mere filing of the petition, to Tollerton, the mortgagee. The notice *589 of injauction would not have been served upon him, but. upon the husband. These facts, it appears to us, make such a case that the mortgage must be considered as having been made pendente lite, and that it is a lien inferior to the decree.
We have the less hesitation in coming to this conclusion, inasmuch as the facts found show that Tollerton, the testator, had brought suit against Williard in July, 1861, the alimony suit then pending. Perhaps -he was apprehensive that, if he awaited the slow process of the law, the alimony decree would be rendered before his judgment could be obtained, and thus his claims would be subordinate to the rights of the wife. Be this as it may, he makes an arrangement with a husband, already sued for divorce, the mortgage is given, and the suits dismissed. If Tollerton’s claim,, as now made, is correct, he has thus succeeded in metamorphosing a claim, at least of doubtful validity against the wife, into one entirely superior to all her rights. It might further be observed, that after Tollerton took his mortgage he wrote to Mrs. Williard, informing her that he had agreed to wait on Williard for five years, but making no-mention of having obtained a mortgage, and she had no actual notice of the mortgage until after she had taken the sheriff’s deed. Possibly, if Tollerton had informed her of all the facts, with the same frankness with which he stated that he had given her husband liberal time, and had Mrs. Williard been duly advised of the existence of the mortgage, her course might have been different.

Judgment of the district court affirmed.